UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CATHERINE M. HUNTER,**

        **Plaintiff,**

**v.**                                          **Case No:   5:13-cv-466-Oc-18GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Catherine M. Hunter (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB"). Doc. No. 1.[1] Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) failing to develop the record with regard to treatment provided by Dr. Parmanand Gurnani; 2) posing a hypothetical question to the Vocational Expert ("VE") that did not adequately account for her limitations; and 3) finding her testimony concerning her pain and limitations not credible. Doc. No. 19 at 26-34. For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's final decision.

**I.    THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

---

[1] On April 22, 2010, Claimant filed an application for a period of disability and DIB, alleging disability beginning on April 21, 2007. R. 162-63. Claimant last met the insured status requirements of the Social Security Act on December 31, 2007. R. 12.

disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity.  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience.  If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work.  At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted).  The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II.     STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.  ANALYSIS.

### A.  Duty to Develop Record.

At the hearing, Claimant's attorney asked her a series of questions about her mental health treatment. R. 52-53. During this colloquy, Claimant testified that Dr. Gurnani, a psychiatrist, has treated her for fifteen (15) years. R. 52. No further testimony was elicited concerning the extent or frequency of Claimant's treatment with Dr. Gurnani. R. 28-74. Claimant argues that the ALJ failed to develop the record as it pertains to treatment provided by Dr. Gurnani. Doc. No. 19 at 33-34.[2] Specifically, Claimant maintains that the ALJ should have "questioned [her] regarding how regularly she had seen Dr. Gurnani over the past 15 years; and requested that prior counsel attempt to secure additional office notes from [Dr. Grunani]." *Id*. at 34.

The claimant bears the burden of proving that he or she is disabled, and, thus, is responsible

---

[2] The heading introducing this issue suggests that Claimant is challenging the ALJ's decision to assign little weight to Dr. Gurnani's opinions. Doc. No. 19 at 33 ("ALJ Jones Committed Error by Failing to Give 'Great Weight' to the Opinions of Plaintiff Hunter's Treating Physician Regarding the Severity of her Mental Health Issues"). However, Claimant's arguments thereunder demonstrate that she is also challenging the ALJ's development of the record as it pertains to her treatment with Dr. Gurnani. Doc. No. 19 at 34.

for producing evidence to support his or her claim for disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)). Nevertheless, since a hearing before an ALJ is not an adversarial proceeding, the ALJ has a basic obligation to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). This obligation requires the ALJ to develop the claimant's complete medical history for at least the twelve (12) months preceding the month in which the application was filed. *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(d)). Further, this obligation applies regardless of whether the claimant is represented by counsel, but it rises to the level of a special duty when the claimant is unrepresented. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). By implication, where the claimant is represented during the administrative process or counsel has been waived, the special duty to develop the record does not take effect. *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (citing *Brown*, 44 F.3d at 934). In determining whether it is necessary to remand a case for development of the record, the Court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown*, 44 F.3d at 935 (quotations and citations omitted).

The ALJ had a basic duty to develop the record given the presence of counsel throughout the administrative process. As such, the ALJ was only required to develop Claimant's complete medical history from April of 2009 to April of 2010, the date Claimant filed her application for DIB. *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(d)). Claimant, however, does not contend that the ALJ breached this duty, nor does the undersigned find that the ALJ breached this duty.[3] Instead, Claimant argues that the ALJ's duty to develop the record was broader than that

---

[3] The medical record does not contain any treatment records from Dr. Gurnani dated between April 22, 2009 and April 22, 2010. R. 291-429. However, the absence of such records is not indicative of a failure to develop a full and fair record. On March 16, 2011, Claimant completed a biopsychosocial assessment in which she reported that her last treatment with Dr. Gurnani occurred in 2004. R. 383. Indeed, the record contains a psychological evaluation

required under the governing law.  Claimant, however, bore the burden of proffering the very evidence she argues the ALJ should have elicited.  *See* 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "[y]our responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled").  Therefore, the ALJ did not breach her duty to develop a full and fair record by failing to question Claimant about the frequency with which she saw Dr. Gurnani or by failing to direct counsel to secure addition treatment records from Dr. Gurnani.  Accordingly, it is **RECOMMENDED** that the Court reject Claimant's argument.

    **B. Hypothetical to VE.**

Claimant argues that the ALJ's hypothetical question to the VE fails to account for Dr. Gurnani's opinions that she has little to no ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them, and to deal with normal work stress.  Doc. No. 19 at 31-32.  Once the claimant proves that he or she can no longer perform his or her past relevant work, as is the case here (R. 18-19), the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."  *Jones v. Apfel*, 190 F.3d 1224, 1228-30 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  An ALJ may rely on the testimony of a VE in determining whether the claimant can perform other jobs in the national economy.  *Id.* at 1229.  The ALJ is required to pose hypothetical questions which are accurate and which include all of the claimant's functional limitations.  *Pendley v. Heckler*, 767 F.2d 1561,

---

by Dr. Gurnani dated June 7, 2004.  R. 296-99.  Accordingly, the record reflects that Claimant received no treatment from Dr. Gurnani between April of 2009 and April 22, 2010.

1563 (11th Cir. 1985). However, the ALJ need not include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony at step five, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).[4]

On January 27, 2012, Dr. Gurnani completed a medical source statement (the "Assessment") regarding Claimant's mental ability to perform work-related activities. R. 379-82. In it, Dr. Gurnani opined, in relevant part, that Claimant has little to no ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them, and dealing with normal work stress. R. 380.[5] The ALJ considered the Assessment, and afforded it little weight because "it is absent treatment records supporting the assessment including but not limited to a current mental status examination, treatment plan, or statement of response to treatment" and "the record demonstrates an approximate 7-year lapse since the claimant was last seen by Dr. Gur[n]ani and his subsequent mental health assessment." R. 16, 18.

At step four of the sequential evaluation process, the ALJ found that Claimant has the RFC to perform "light work" with the following additional limitations:

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[5] Nothing in the Assessment suggests that Dr. Gurnani was providing a retrospective opinion concerning Claimant's impairments during the relevant period. *See* R. 379-82. Instead, it appears the Assessment assesses Claimant's limitations as of January 27, 2012, the date the Assessment was completed. *Id.*

> [S]he could occasionally stoop and climb ladders, ropes, and scaffolds. The claimant is limited to frequent overhead reaching bilaterally. She could perform simple, routine, and repetitive one to two-step tasks, but should not work with the general public or with a team.

R. 14. At the hearing, the ALJ posed a hypothetical consistent with the foregoing RFC, and the VE testified that Claimant would be capable of performing other work, such as housekeeping and assembler of printed products. R. 65-68. The ALJ subsequently relied on the VE's testimony in determining that Claimant could perform work in the national economy that exists in significant numbers. R. 20.

The ALJ's hypothetical question was not incomplete due to her omission of the Dr. Gurnani's opinions concerning Claimant's ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them, and dealing with normal work stress. The ALJ assigned the Assessment, which contained the opinions at issue, little weight. R. 18. Though Claimant does not challenge the reasons the ALJ articulated for assigning the Assessment little weight (*see* Doc. No. 19), the undersigned has nevertheless considered whether the ALJ articulated good cause for assigning less than substantial weight to the Assessment. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight).[6] Here, the ALJ provided two (2) reasons for assigning the Assessment little weight: 1) the lack of citation to medical records supporting the limitations therein; and 2) the seven-year lapse in time since Dr. Gurnani's last assessment of Claimant's mental health. R. 18. The record supports these findings and together these findings provide good cause for assigning the Assessment little weight. *See* 20 C.F.R. § 404.1527(c)(2-3); *Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005)

---

[6] Although the record only contains evidence that Dr. Gurnani treated Claimant on three (3) occasions over a fifteen (15) year period, neither party disputes his status as a treating physician. Doc. Nos. 19; 20.

(good cause exists when the: 1) treating physician's opinion was not bolstered by the evidence; 2) evidence supported a contrary finding; or 3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.); *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 13-14 (11th Cir. 2012) (per curiam) (noting that three of a treating physician's opinions that did "not appear to be based upon [claimant's] mental and physical conditions within the time period" on or before his date last insured "were not particularly relevant to whether [claimant] was disabled for purposes of DIB.").[7]  Since the ALJ articulated good cause to assign the Assessment little weight, she was not required to include the opinions it contains in her hypothetical to the VE.  Therefore, the ALJ's omission of Dr. Gurnani's opinions from her hypothetical to the VE did not affect the evidentiary value of the VE's response thereto, and thus does not undermine the ALJ's determination that Claimant can perform other work in the national economy.  Accordingly, it is **RECOMMENDED** that the Court reject Claimant's argument.

**C. Credibility.**

Claimant maintains that the ALJ's credibility determination is encompassed in the following excerpt:

> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Doc. No. 19 at 26 (citing R. 17).  Claimant argues that this "boilerplate credibility finding" does not sufficiently articulate reasons for discrediting her testimony, and thus remand in necessary. *Id*. at 26-31.

---

[7] Although Dr. Gurnani provided explanations in support of his opinions in the Assessment, he did not cite to any medical records in support thereof, despite being prompted to do so.  R. 381-82.

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or 3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[8] Thus, once the pain standard is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides

---

[8] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1 (1996).

not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id*. at 1561-62; *see also* SSR 96-7p, 1996 WL 374186, at *2 ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id*.

The ALJ's credibility finding was not limited to the above-referenced paragraph. [9] Immediately following that paragraph, the ALJ provided a detailed explanation as to why she found Claimant's testimony concerning the intensity, persistence and limiting effects of her symptoms not credible:

> In terms of the claimant's alleged impairments, the [ALJ] finds that she is not fully credible regarding her symptoms, functional limitations, or inability to engage in work activity on a consistent and sustained basis. The claimant's allegations of diminished mental capacity due to anxiety disorder, bipolar disorder, obsessive-compulsive personality disorder, and paranoia is unsupported by the medical evidence. Specifically, the medical record does not document any mental health treatment received by the claimant, for her alleged mental impairments, during the alleged period of disability from the alleged onset date of April 27, 2007 to the date last insured of December 31, 2007. Alternatively, the [ALJ] considered the claimant's prior mental health treatment records, but determined that the records fail to establish that the alleged impairments persisted after the alleged onset date. Specifically, the claimant's most recent mental evaluation in June 2004 documents normal findings including good insight, judgment, impulse control, memory, attention span, and GAF of 65. Additionally, the evaluation contradicts the claimant's prior consultative evaluation in May 2004 in that she was only assessed with panic attacks (Exhibits 1F & 2F). Similarly, the claimant's most recent treatment records from The Centers documents normal mental status findings

---

[9] Claimant's myopic and singular focus on the preceding paragraph of the ALJ's opinion evidences either a substantial oversight by counsel or a lack of candor given the detailed credibility finding set forth in the portion of the ALJ's opinion quoted below.

>while highlighting the claimant's strengths. Specifically, she was assessed with the capacity for independent living, normal intelligence, insight, and judgment, and the ability to make decisions, stand up for her rights, and provide transportation. The [ALJ] finds that the assessed strengths and normal mental status examination contradicts the claimant's testimony of inability to work due to diminished focus, panic attacks, and emotional outburst. Additionally, the claimant's ability to provide physical and financial care to her elderly and ailing parents as well as work after the alleged onset date contradicts her testimony of diminished focus. Finally, the claimant's ability to maintain a valid driver's license, regularly operate a motor vehicle, manage her finances, and maintain her home with minimal assistance demonstrates more than minimal level of focus, concentration, judgment, insight, and impulse control.
>
>Regarding the claimant's physical impairments, Exhibits 2F and 3F document normal examination findings within the alleged period of disability. Specifically, the claimant's physical examinations consistently reveal normal range of motion of the cervical, thoracic, and lumbar spine despite radiographic evidence of cervical disc herniation and exam findings of moderate tenderness. The [ALJ] considered claimant's testimony of diminished grip strength as well as her alleged functional limitation but determined the statements inconsistent with the medical evidence documenting 5/5 grip and muscle strength and normal gait. Additionally, the claimant's ability to care for her parents during and after the alleged period of disability evidences more than a minimal level of physical functioning and contradicts her claim that she was significantly impaired due to neck and back pain. Finally, the [ALJ] considered the claimant's testimony that she did not require any emergency medical treatment or hospitalizations since the alleged onset date due to any physical impairment.

R. 17-18. Accordingly, the ALJ found Claimant's testimony concerning the severity and impact of her mental and physical impairments was not supported by the medical evidence and Claimant's activities. *Id*. The ALJ supported each of these broad bases for discrediting Claimant's testimony with references to specific medical records and activities which indeed were not consistent with Claimant's testimony concerning the severity and impact of her mental and physical impairments. *Id*. (citing R. 296-304, 383-403). Claimant does not challenge the

substantive basis articulated by the ALJ in support of her credibility finding. *See* Doc. No. 19 at 26-31. Nevertheless, the undersigned has considered the ALJ's credibility determination and finds that the ALJ articulated good cause for discrediting Claimant's testimony and that her reasons are supported by substantial evidence. *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support). Accordingly, it is **RECOMMENDED** that the Court reject Claimant's argument.

IV.   **CONCLUSION.**

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.   **AFFIRM** the final decision of the Commissioner; and

2.   Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 29, 2014.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy